Next up we'll hear Canard v. PA State Police, No. 16-3346 You may proceed, counsel. Welcome. Thank you. May it please the court, my name is Eric Hamilton. I represent the appellant in this case, Kelly Conard. May I please reserve two minutes for rebuttal? That's granted. Kelly Conard worked for the Pennsylvania State Police for 17 years as a 911 dispatcher. In 2002, she retired from the State Police when her husband, Sean, was deployed with the U.S. Air Force to Shepherd Air Force Base in Texas. In Texas, Ms. Conard continued her career in public safety, holding two different positions. After the deployment ended, Ms. Conard went back to Pennsylvania and reapplied with the State Police for the 911 dispatcher position she formerly held. She was offered the position, subject to the results of a background investigation. Events that followed led the State Police to not hire Ms. Conard and Ms. Conard to file a lawsuit against the State Police and the defendants in 2006. Since that lawsuit, defendants have blocked Ms. Conard from continuing her career. They have given her false and negative job references. I thought you left out something important. She lost the lawsuit. That's correct, Your Honor. And after that lawsuit, defendants gave false and negative references. And this case asks... Your adversary actually points out, hey, this is just a second bite at the apple. The court shouldn't count as that kind of thing. How do you react? Yes, I think that this claim is very different from the first claim. All of the facts forming this claim occurred after the first claim. And the retaliation in this case is very closely tied to the protected speech here, in that the defendants in these job references have specifically discussed the lawsuit. And that ties this together. I'm trying to piece this together chronologically because you filed a suit in 2015, the second suit? That's right. And that suit was for conduct that occurred nine years before, or are you saying that it was just a continuing pattern of the same conduct? The... I got the impression it was for all that happened before. It does not cover anything... About eight years before the filing of the suit. Yes, the previous eight years. Anything before 2006, she is not suing upon that today. There are time limits? I mean, she is saying all of this that I'm complaining about in the suit of 2015 occurred eight years before I filed the suit. Is that accurate? No, no. The references have occurred just in the last few years. The last few years before... How many years before the complaint is she complaining about? Before the complaint in this case? Before the 2015 complaint. That's the complaint in this case. Yes, yes. The complaint states that the references went all the way into 2014. How do these allegations since the lawsuit differ from the ones before the lawsuit? I mean, obviously they're different in time, but aren't they the same nature? I don't think so, Your Honor. Your Honor, the complaint identifies four different types of speech in these references, and at least with three of them, they could not have occurred in that background investigation that occurred in 2005. You have the Doe defendant telling a reference caller that Ms. Conard never worked for the state police. You have Heil telling a reference caller he did not work with her. And you have defendants telling reference callers that she sued them in the past. But even with respect to the negative references, defendants have treated third-party reference callers differently than they did that background investigation. The defendants were deposed in the Conard one lawsuit, and in that deposition, they were asked... That's the first lawsuit? Yes, Your Honor. In that deposition, they were asked if they had received calls from third parties about her, and both stated that they had not given a negative reference. They referred the caller instead to the Human Resources Department. But their conduct changed, of course, after the lawsuit as the complaint alleges. And I want to make sure I address the public employment framework, which is the first question that this court put to the parties. It's important to note that defendants have conceded that at least some of the conduct Ms. Conard sues upon is protected by the First Amendment. They make this concession in the motion to dismiss that precipitated this appeal, and again, have a lease brief filed here. You're not including any of the conduct that was addressed in the disposa by the first lawsuit, are you? No, Your Honor. This is all new conduct that occurred, I guess, what years are you talking about? Yes. The protected conduct is Ms. Conard's speech in the lawsuit from 2006 until 2010, and the First Amendment would also protect her decision to resolve the dispute through litigation. Now, at this point, she's a former employee. Does the Pickering-Conard framework even apply here? No. Our position is it does not apply. Because she wasn't a public employee? Correct. Correct. Because she retired four years before she spoke. She retired before she went to Texas? She did, yes, in 2002. How did she come about learning what these two offices, Ohio and I can't remember that church, is it? Yeah, Mr. Kirk? How did she learn that they were making negative references about her? She has been in contact with the individuals that she has applied with, and they have told her. I think that that fact is one that is important in why discovery is so important. But Tripp and Heil's deposition will be very important in illuminating the issues raised by her claim, especially the causation element. I wonder, just reading through, and I know this may be factually based, but these things happen quite often when employees are called and asked to give references,  but then that turns into a lawsuit. I mean, I didn't discern that the comments that they were making were so horrible, and they were disclosive in the first lawsuit. So the basis now is what, that they were making disparaging remarks about me? No, no. I think the conduct goes far beyond that. They have told reference callers she never worked for the state police even, and that is devastating. And she knows that they were doing this. She knows that the comment that the officers made was she never worked for us. That happened in one instance. Again, Ms. Conard, of course, was not party to these conversations between her prospective employers and the defendants, so the discovery will be important to further reveal what happened. This is an interesting legal framework. Our McLaughlin case from 2001, I guess, holds that the defendant must threaten or coerce a third party to act. Do we have any of that here? Well, I think that the test states that particularly virulent conduct is required, and then it later states that the threat, coercion, or intimidation is part of that. And I noticed that I think courts are somewhat flexible in applying those three terms. In the Fernandez case last year in the District of New Jersey, that court allowed a defamation allegation to go forward under McLaughlin into discovery. But, of course, our first argument with respect to McLaughlin is it does not apply because there is a private information exception to that rule, and defendants' speech in Ms. Conard's employment references fit within that exception. And the Suarez case out of the Fourth Circuit, which we relied upon, deals with that, right? It does. It does. And the Fourth Circuit has stated that two other times since the Suarez. And then other courts, including this court in a not-presidential opinion, have stated that McLaughlin applies to retaliatory speech about matters of public concern. So under either formulation, whether it's a private information exception or a public concern test, defendant's retaliation does not trigger it. Do we need to write precedentially on this potential limit of McLaughlin? Well, the court, we're addressing McLaughlin because the court's order suggested the parties do so. But, no, at no point in this litigation has McLaughlin come up. Counselor, after 45 years as a judge, state and federal, I've seen a lot of cases involving references for the defendant. And the best thing that a person can do when he gets a request for a reference is to hang up. Because if he gives a good reference, and then the person messes up, he'll get sued by the employer. And if he gives a bad reference, then the potential employee will sue him. So it's a really risky thing to say anything. And that's a real concern. There was a case in New Jersey, which I read, where a state court held that the defendant could not be required to make a statement where he took the position that he wouldn't talk about it for an employee. And he had bad information about the employee. And the court held, I thought correctly, that you can't just call somebody up and put a duty on them. And you've got a case here where when these people opened their mouths, they were heading for trouble. I mean, it's a real worry. Yes, Your Honor. I would note that the Pennsylvania State Police takes the same approach you suggested, in that a prospective employer calling the state police must obtain the consent of the former state police employee before information is given beyond the individual's salary start and end dates, things of that nature. Right. Yes, and that fact, I think, is significant in demonstrating that this is private information that should not be subjected to McLaughlin. They should also require a release of the person for anything they say, because otherwise they'll be in a position where they have to defend their conduct, or they may be. I don't know. Yes. To summarize, neither the public employment framework nor the McLaughlin test apply to this claim. If this court disagrees, then discovery is required under either test. The public concern element of the public employment framework is- Before you go, just one other thing. On causation, do you have any allegations that suggest a meaningful temporal relationship between the speech and the alleged retaliation? Yes. That was an issue for the district court. That's right. We do not take the position that temporal proximity alone is the proper way to measure causation. There are four different ways a First Amendment retaliation plaintiff can prove causation, and at this stage of the case, it is too soon to slot this complaint into one of them. I think the Mitchell v. Horn case that this court decided is significant. This is, of course, a pro se complaint, and in Mitchell the court said that saying retaliation is enough to allege the causal connection element for First Amendment retaliation. It's our position that the magistrate judge's analysis was premature and that discovery is necessary. As I understand it, this case was decided on a motion to dismiss. Yes, Your Honor. We just want to get past that motion, and you might lose on summary judgment or you might not. Yes, Your Honor, I agree with that. Did you just state again why the McLaughlin language or rule doesn't apply in your case? Why McLaughlin should not be applied in your case? I'm just looking at some of the language from the case, and I don't see why it shouldn't apply. Right. So the private information exception, I don't know that it's explicitly stated in McLaughlin. The Fourth Circuit case, Fares, from which this court borrowed in McLaughlin, clearly states that there's a private information exception that would accept speech-based retaliation from that test. And the MRS case that this court decided not precedentially states that it would apply to retaliatory speech about a matter of public concern. Thank you, Your Honor. Thank you, counsel. May it please the court. My name is Howard Hopkirk. I am a senior deputy attorney general with the Pennsylvania Office of Attorney General. I represent the appellees, the Pennsylvania State Police, Sergeant Tribb and Sergeant Heil. Initially, despite the protests of my opponent, I believe the present case is a veiled attempt to re-litigate the claims in Kinnard's 2006 lawsuit. While Ms. Kinnard states that a retaliation claim is based on the 2006 case, both the complaint and her brief suggest that she is attempting to use this case to resurrect her earlier claims. Well, she points out that there are things that occurred since 2006. And that's what she's relying upon. Doesn't that matter? So I think that does matter. And if the court strictly holds her to that claim, then I think, you know, and just looks at the retaliation for filing the lawsuit. But while they give lip service to that, for example, I point to page 27 of Appellant's brief where they talk about doing discovery to show what really happened back in 2003. You know, that that's going to show all these bad things about the appellees. And I think to the extent that the appellees decided that Kinnard wasn't a good employee and whatever else went with that, that was decided before the 2006 case. So what if, I mean, aren't we supposed to credit the allegation that things have happened since 2006? In our procedural posture? Yeah, I think so. So I think you can divide the case into all the things that had to do with the 2006 case. And we think that's barred. If you're just looking at the filing of the lawsuit and the alleged retaliation, well, that is a different animal. And narrowly, you might be able to look at a claim there. She seems to be asserting a continuing pattern of conduct, the same conduct that occurred with regard to the 2006 complaint. They have continued to give her very, very negative references. But this is a, her claim really is just a retaliation claim for filing the initial lawsuit. And so this sort of continued bad blood claim doesn't apply in that situation. Is that statement you said correct? In fact, I thought part of the claim was that they made it difficult for her to get employment for some other potential employers, not just for filing a lawsuit. Well, that's the alleged retaliation for filing the prior lawsuit in the complaint. I was sure of that. I know that that's a different thing than the remedy sought in the lawsuit itself. I thought she was suing because they wouldn't give her the job back. Our position is just that she should not be allowed to bootstrap her earlier claims onto this claim and then have this mega claim where she goes back and relitigates the previous claims. But there are other reasons why her complaint should be, was properly dismissed in its entirety. And the first is under McLaughlin, we think that this is not the type of virulent language which is an exception to the rule in McLaughlin. And the private exception, we have a difference in what we believe the private language speech exception is. We think that the private speech exception is for things which are like telling people that someone has a brain tumor, someone had an abortion, things of that nature which are almost per se slanderous. Telling someone, assuming that's true for purposes of the complaint, that she never worked here, that's not a poor employee. That doesn't fall within the private language exception. And we don't see why this is distinguishable from McLaughlin. So why does the Pickering-Connick standard apply, if at all? So if you're looking at just her, this amended, the retaliation claim based on filing the complaint, then that does fall, she wasn't an employee, and so that would fall outside of that test. We're going to concede that. But to the extent she's trying to relitigate these things which happened previously, we believe that would fall under the public employment framework as well as being barred by collateral estoppel. She does assert that McLaughlin does apply here because the defendant's retaliated by persuading third parties from not hiring her, and therefore they used particularly virulent language or language of a virulent character. So, I mean, that is the test, but I don't think if you look at what they're alleging, that saying somebody was a bad employee or saying they never worked here, that does not meet the virulent language test. So, I mean, the court's going to have to look at that, but I think this falls under McLaughlin and doesn't fall under the exceptions to it. So the comment that she complains about is a comment that happened just prior to the filing of the second lawsuit, or for the years prior to that lawsuit? I'm sorry. The second, her claim is that the officers conducted in giving her negative references. And occurred just prior to the second lawsuit. So, I mean, that is their allegation, but we don't think that what they said when they were allegedly called falls outside of McLaughlin. Depositions have been taken about a period of time. So the deposition, that goes back to the first lawsuit, and that's part of what we're talking about now. You know, they're trying to resurrect things which happened in the first lawsuit, and this court affirmed the district court in that case in saying that the things she was complaining about weren't matters of public concern using the public employment context. And just briefly, the court had asked about that. We don't think there's necessarily a bright line rule. You have to look at what the subject matter of the case is and does it relate back to the employment, not necessarily whether the person was employed at the time. But one thing I wanted to point out to the court was the other side says, no, this isn't a public employment case. But then they rely on McGreevey versus Stroup, which involved a school nurse who spoke out on matters of public concern, and she got bad employment evaluations. And so now in their brief, they say, well, bad employment evaluations are the same things as bad references. But it seems that if they're going to say that this doesn't fall within the employment context, you can't say that bad references are really an employment action. Maybe you can help me understand it a little bit better. Does a public employment standard apply when the litigant, the plaintiff,  I believe so, yes. It has to be during the employment. Yes. And the conduct here did not occur during the employment? That is her employment. She was no longer employed. So if you look at the complaint, a lot of the complaint has to do with allegations when she was an employee when she was not. But then the specific retaliation for filing a lawsuit, that falls outside it. The offending conduct occurred after her employment? Yes, Your Honor. And we think that's really would be the only relevant conduct, but things get smeared a little bit because the other side or she raised all these allegations and there seems to be this inclination to go back and revisit the earlier case. Besides McLaughlin, we think that there's no causation and I understand the discussion as to, well, maybe just saying retaliation is enough for a motion to dismiss. But in this case, since it's pled that there was all this bad feeling before the lawsuit occurred, we don't see how you can now say, oh, the lawsuit caused them to not have a good opinion of her. For purposes of pleading, isn't that sufficient? For purposes of pleading, I mean, a motion to dismiss at this stage, isn't it enough to plead causation? We're not at summary judgment. We're not. I'm just saying that based on what she actually pled, if she says they hated me before I filed this lawsuit, they recommended that I not be hired by the state police before I filed this lawsuit, is there really any causation when she tries to allege they gave bad references about me because of this lawsuit? It seems like, no, they already had made that determination before and you don't need to do discovery to figure that out. So that's basically our argument, but if the court has further questions. I don't have any questions. Okay. Thank you, counsel. Thank you, Your Honor. Your Honor, it's just a couple points on rebuttal. Mr. Halifax, I just wanted to ask you, you took this matter on as a pro bono attorney, didn't you? Yes, Your Honor. Well, for that, you're entitled to one. Thanks. Thank you, Your Honor. The first point I wanted to make was that this case is not a continuation of the first lawsuit. The magistrate judge addressed any race judicata or preclusion issues in his report and recommendation at JA 14 to 17, and in her opposition to the magistrate judge's report, Ms. Conard stated that she agreed that the pre-2006 conduct would be barred and that is not part of this claim. With respect to... Do you have an issue with that? No, Your Honor. No, no. Anything before Conard 1 is not part of this claim. The second lawsuit was filed in 2015. Correct. Isn't the essence of her complaint, though, regarding conduct that occurred eight years before 2015? Yes. Yes, but not before Conard 1 was filed in 2006. Eight years before? Has she waited eight years to file a complaint? Well, I... So the protected conduct occurred between 2006 and 2010, and then the references occurred after that. When you say references, what are you referring to? That refers to Ms. Conard applying for jobs, not getting them because her prospective employers called the defendants and... She knows that for a fact, or is she asserting that this is what happened? She has spoken with the individuals, yeah, multiple individuals that she applied with. And you said you got bad references from state police officers. Yes, yeah. But I wanted to make a point on the DeVore case with respect to McLaughlin because that arises in the Eastern District of Pennsylvania after McLaughlin, and this case was a First Amendment retaliation claim arising on negative references, but McLaughlin was not applied and the case was allowed to go to discovery. Okay. Well, thank you, Counsel. I see your time is up. Yes. As Judge Greenberg said, we want to thank you, Mr. Hamilton, and your firm for excellent representation. I hope Ms. Conard... I don't know if I'm pronouncing it right, but Conard knows how excellently she was represented here. Counsel for the government, State of Pennsylvania, also a great job. We'll take the case under advisement, and we'd like to meet you at sidebar, but again, thank you for your pro bono efforts. It's very much appreciated. Thank you, Your Honors.